James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Edmund A. Normand
Joshua R. Jacobson
NORMAND PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
(407) 603-6031

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JESSICA DINICOLA-ORTIZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GEICO INDEMNITY COMPANY,<br><br>Defendant. | Civil Action No.<br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jessica Dinicola-Ortiz ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Geico Indemnity Company ("Defendant" or "Geico Indemnity") and in support thereof states the following:

**NATURE OF THE ACTION**

1.  Plaintiff brings this class action to recover for (and put an end to) Defendant's systematic underpayment of total loss first-party auto insurance claims. As set forth in detail

below, Defendant has a routine policy and practice of underpaying insureds for total loss claims in violation of its policies and New Jersey law.

2. Plaintiff was a named insured under a Defendant automobile insurance policy (the "Policy"), which provided coverage for automobile damage. Defendant's Comprehensive and Collision coverages allow Geico to limit its liability to an insured vehicle's "actual cash value" (ACV) in the event of total loss. During the class period, Defendant used materially identical standard policy forms for all insureds (and class members) in New Jersey.

3. The Policy and New Jersey law prohibit automobile insurance companies from manipulating the data used to value a vehicle in order to underpay claims. Specifically, New Jersey law prohibits insurers from reducing claim values with arbitrary, unexplained, and unjustified adjustments to the condition of comparable vehicles that bear no relation to ACV. An insurer must not misstate or conceal material facts that bear upon its estimate of value.

4. In adjusting and settling total loss claims, Defendant flagrantly violates these obligations. Specifically, Defendant applies a uniform, arbitrary "condition adjustment" deduction to the cost of these comparable vehicles without even distinguishing one vehicle from the next. These arbitrary and unjustified *adjustments* artificially and improperly reduce claim payments by hundreds or thousands of dollars.

5. By applying this wrongful "condition adjustment," Defendant has breached its duty to pay what it owes on insured total losses, damaging Plaintiff and the other Class members.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendant because Defendant directs, markets, and operates its insurance business throughout the State of New Jersey and makes its insurance services available to residents of New Jersey. Further, this Court has personal

jurisdiction over Defendant because Defendant's tortious conduct against Plaintiff occurred in substantial part within this District and because Defendant committed the same wrongful acts to other class members in this judicial District.

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative classes, including Plaintiff, is a citizen and domiciliary of New Jersey, and Defendant is a corporation incorporated in Nebraska with its principal place of business in Maryland, thus CAFA's minimal diversity requirement is met. Plaintiff seeks damages (including actual, compensatory, statutory, and punitive, as provided by law) and restitution for Plaintiff and the Class in an amount to be determined at trial, but which, when aggregated among proposed classes of thousands of individuals, exceeds the $5,000,000 threshold for federal jurisdiction under the Class Action Fairness Act, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

## THE PARTIES

9. Plaintiff, at all relevant times, was a New Jersey citizen and domiciliary who was insured under a Geico Indemnity automobile insurance policy in 2021.

10. Defendant Geico Indemnity is incorporated in Nebraska and has its corporate headquarters in Maryland. Geico Indemnity issues insurance policies in New Jersey and is registered with the New Jersey Department of Banking & Insurance.

## FACTUAL BACKGROUND

**A.     *Overview of Valuing Total-Loss Vehicles***

11.     Auto insurance policies are policies of indemnification – insureds pay premiums in exchange for the insurer's promise that, should a loss occur, the insurer will return the insured to their pre-loss position.

12.     In this circumstance, "loss" is the word to describe the monetary injury caused by the event insured against, or the amount necessary for the insured to get back to the same position the insured was in prior to a given event. If, as a result of an accident, the door of an insured vehicle is physically damaged, the cost to repair the door is the "loss" suffered by the insured. This amount includes the costs of necessary parts and labor needed to fix the damage or replace the damaged parts.

13.     Where the loss approaches the value of the insured property, however, it is in the interests of the insurer to declare the vehicle a "total loss" and pay the vehicle's ACV rather than making uneconomic repairs. For instance, suppose a vehicle with an ACV of $10,000.00 is severely damaged. The cost to buy the parts and perform the labor necessary to return the vehicle to its pre-loss condition is $15,000.00. In such a case, an insurer would not be obligated to make $15,000 repairs to a vehicle whose ACV is $10,000. Instead, the insurer's liability is limited to the vehicle's pre-loss value, i.e., $10,000.00. Insurers write this loss limitation into their policies, limiting their liability to the lesser of ACV or the cost to repair or replace the damage. In this hypothetical, because the loss exceeds the ACV, the insurer would be liable only for the ACV.

**B.     *The Geico Insurance Policy***

14.     Defendant issues insurance policies for private passenger automobile physical damage to insureds in New Jersey.

15. At all times material hereto, Plaintiff owned a 2015 JEEP Cherokee, VIN 1C4PJMCSXFW773483, that was insured under a New Jersey automobile insurance policy issued by Defendant.

16. Upon information and belief, during the class period, Defendant issued materially identical insurance policies to Plaintiff and putative Class members.

17. The Policy promises to pay for such loss in money, or to repair or replace the damaged or stolen property.

18. The Policy limits Defendant's liability for loss, with respect to "Collision" and "Comprehensive" coverage, to the "actual cash value of the property at the time of loss." (*Id.* at 10).

19. The Policy provides: "***Actual cash value*** is the replacement cost of the auto or property less ***depreciation*** or ***betterment***." The Policy defines "betterment" as "improvement of the auto or property to a value greater than its pre-loss condition," and "depreciation" as "a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes."

C. *New Jersey Law*

20. The Policy is subject to, and governed by, the laws of the state of issue—here, New Jersey.

21. In valuing total loss claims, Defendant must rely only upon "written, itemized valuations showing all options and deductions." N.J.A.C. § 11:2-10.4(a). Where a database of vehicle values is used in valuing total loss claims, GEICO must explain and justify the condition adjustments made to the loss vehicle and comparable vehicles.

22. New Jersey law makes this obligation clear: "If the database uses several price ranges for the same model vehicle depending on the condition of the vehicle, it must clearly

5

indicate what condition the vehicle is being valued at and define in detail the difference between such rating categories." N.J.A.C. § 11:3-10.4(a)(3). The purpose of this requirement is to ensure adjustments are reasonable and justified and to ensure consumers can evaluate and challenge any improper deductions.

23. Nonetheless, Defendant bases its offers and payments on manipulated data and reports that do not meet its duties under New Jersey law, imposing arbitrary and unexplained "condition adjustments" to artificially reduce the values of comparable vehicles.

24. Defendant engages a vendor, CCC Intelligent Solutions, Inc. ("CCC"), to assist with computing vehicle values and determining ACV for purposes of paying total loss claims. Defendant uses the "CCC One" software platform to create "Market Valuation Reports" that purport to show ACV calculations based on comparable vehicles recently sold or listed for sale in the insured's geographic area.

25. Defendant offers its insureds a claim settlement that includes a valuation equivalent to the valuation amount found on the report. Defendant used a materially identical method for computing ACV for Plaintiff and all class members.

26. The Market Valuation Report for Plaintiff (discussed in more detail *infra*) is attached hereto as **Exhibit A**.

27. The CCC reports adjust list or sale price of each comparable vehicle to account for differences between the comparable vehicles and the total-loss vehicle. Specifically, upward or downward adjustments to the listed price of comparable vehicles are made based on "options" and "mileage" of the insured vehicle versus the comparable vehicles.

28. Critically, the valuation reports reduce the estimated values of comparable vehicles, citing a "condition adjustment" but fail to itemize or explain the basis for these condition adjustments.

29. CCC assumes every comparable vehicle is in retail condition, and thus imposes the "condition adjustment" to take the comparable vehicles from retail to private party condition. These adjustments can be substantial, as was Plaintiff's, in the amount of $1,196 for each comparable vehicle considered.

30. The valuation reports contain a cursory explanation, noting "The Condition Adjustment sets that comparable vehicle to Average Private condition[.]" This admission confirms that Defendant's total loss payments were not paid on a retail value basis.

31. These "adjustments" were not based on any actual data or objective factors— neither Defendant nor CCC inspected nor investigated the condition of the comparable vehicles, and have no basis by which to determine whether the comparable vehicles were in precisely the same (and better) condition.

32. In many cases, Defendant deducted the exact same negative "Condition Adjustment" to each comparable vehicle considered in its calculation, abandoning even the pretext that the adjustments were tied to objective factors or data. *See, e.g.*, Ex. A, at 12.

33. These condition adjustments arc arbitrary and unjustified. Indeed, even though each comparable vehicle has unique characteristics, the reports reduce the value of multiple comparable vehicles by the exact same amount, down to the last dollar, without any itemization or explanation for the reduction.

34. Nowhere does Defendant explain or justify the amount of the reduction, nor does Defendant explain why the condition of each unique comparable vehicle justifies the exact same

condition adjustment down the last dollar. Defendant does not explain why the list price of a vehicle docs not accurately reflect the condition and characteristics of the vehicle, or why the specific amount of the adjustment is correct. And Defendant does not explain why adjustments to comparable vehicle prices are needed when the value of the loss vehicle has been independently adjusted to reflect its characteristics, mileage, configuration, and condition.

35. In reality, the condition adjustments are a sham that Defendant uses to underpay claims. These blind and arbitrary reductions bear no relation to the condition or value of the comparable vehicles or the loss vehicle. The application of an arbitrary condition adjustment to reduce the value of comparable vehicles artificially reduces the valuation of the loss vehicle to benefit the insurer at the expense of the insured.

36. The methodology described in the CCC Valuation Report is statistically invalid and does not result in a proper valuation for total loss vehicles.

37. The CCC Valuation Report provided Defendant with vehicle values that did not, and indeed were not designed to, consider the retail costs for comparable vehicles.

38. Defendant did not correspond with a single car dealer or consumer purchaser of the comparable vehicles to discover the condition of the comparable vehicles or whether the "Condition Adjustment," as applied, was accurate.

> **D.** ***Defendant Failed to Pay Plaintiff the ACV to Which She Was Entitled Because It Applied a Downward "Condition Adjustment" to the Comparable Vehicles Used to Determine ACV.***

39. Plaintiff owned a 2015 JEEP Cherokee Latitude, insured by Defendant under a New Jersey auto policy.

40. On or about October 16, 2021, Plaintiff was involved in an accident while operating the Insured Vehicle. Following the accident, Plaintiff filed a property damage claim with Defendant, claim number 8741613500000001-01.

41. Defendant declared Plaintiff's vehicle was a total loss. Thus, Defendant purported to adjust and settle the claim based on ACV.

42. The CCC Market Valuation Report used by Defendant reflected a base value of the insured vehicle of $17,888.00. (Ex. A, at 1).

43. To determine the base value, Defendant considered the average retail price of twelve comparable vehicles from dealerships close to Plaintiff, all of which were the same make, model and year as the insured vehicle. (*Id*. at 11–14).

44. Defendant then imposed a negative $1,196.00 "Condition Adjustment" to the list price of each comparable vehicle considered in the Market Valuation Report, thereby reducing the value from retail to private party. (*Id*.).

45. The Market Valuation Report explains that the "condition adjustment" sets the comparable vehicles to "Average Private condition." (*Id*. at 11).

46. The "condition adjustment" is arbitrary and unjustified and bears no relation to the actual value of the comparable vehicles.

47. Defendant's policy and practice of applying an arbitrary, unexplained, and unjustified condition adjustment to comparable vehicles violates applicable state law and is a breach of the terms of the policies of insurance Defendant entered into with its insureds, which specifically require Defendant to compensate Plaintiff and insureds for the ACV of the loss vehicle, to provide "itemized valuations showing all options and deductions," and to "clearly indicate" and "define in detail" the difference between condition categories.

48. Plaintiff has been damaged by Defendant's policy of applying arbitrary and unjustified adjustments to comparable vehicle values in calculating ACV as required under the Policy and state law.

49. Upon information and belief, Defendant has applied improper condition adjustments to comparable vehicles for potentially tens of thousands of first-party total loss claimants in New Jersey, even though these adjustments violate their contracts and applicable state law.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action individually and as a class action under Fed. R. Civ. P 23(a) and (b), on behalf of the following proposed Classes:

> All individuals insured in Jew Jersey by GEICO Indemnity under a private passenger vehicle policy who, from the earliest allowable time to the present, received a first party total loss settlement or settlement offer based in whole or in part on the price of comparable vehicles reduced by a "condition adjustment."

51. Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Judge(s) and Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

52. **Numerosity:** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are thousands of Class members, the precise number is unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action

by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

53. **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a. whether Defendant applied arbitrary and unexplained condition adjustments to comparable vehicles to calculate the value of loss vehicles;

    b. whether Defendant, through the foregoing practices, breached its contracts with Insureds;

    c. whether Defendant's use of improper condition adjustments to value loss vehicles caused injury to Plaintiff and the Class;

    d. the amount and nature of relief to be awarded to Plaintiff and the other Class members.

54. **Typicality:** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members were all similarly affected by Defendant's application of a "condition adjustment" to ACV total loss settlement payments under insurance policies that provided for an ACV payment in the event of total loss. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

55. **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members, Plaintiff has retained counsel

competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay ACV in total loss situations, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected.

56. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate each separate claim against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford individualized litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT 1
### (Breach Of Contract)

57. Plaintiff repeats and reallege the allegations set forth in paragraphs 1–56 as if fully set forth herein.

58. Plaintiff brings this claim individually and on behalf of the other members of the Class.

59. Plaintiff and each of the other Class members were parties to insurance contracts with Defendant, with terms set forth in the Policy.

60. Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

61. Defendant, by paying on the total loss claim, determined that Plaintiff and each Class member complied with the terms of their insurance contracts and fulfilled all of their duties that the insurance contracts imposed for them to be paid on their total loss.

62. Defendant invoked its ACV limit of liability clause and purported to pay Plaintiff and each of the other Class members the ACV of their total loss vehicles.

63. Under the Policy, Defendant was required to pay full ACV without arbitrary, unwarranted deductions.

64. Defendant breached its insurance contracts with Plaintiff and each Class member by basing its valuation and payment of Plaintiff's and each Class member's claim on values of comparable vehicles that had been artificially reduced by an arbitrary and unjustified "condition adjustment" that is not itemized or explained.

65. As a result of the contractual breaches, Plaintiff and each of the other Class members have been damaged in that they received less than what was promised in their contracts, and they are entitled to actual damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in her favor and against Geico Indemnity Company as follows:

a. An order certifying the proposed Class as requested herein, and appointing Plaintiff's undersigned attorneys as Counsel for the Class;

  b. An award of compensatory damages, and all other available damages, for Plaintiff and the other Class members against Geico Indemnity Company, as well as pre- and post-judgment interests on any amounts awarded;

  c. An order enjoining Geico Indemnity Company from continuing the illegal practices alleged herein, and for other injunctive relief as is proven appropriate in this matter;

  d. An award of attorney's fees, expenses, and costs of suit as appropriate pursuant to applicable law

  e. An order providing such other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

        CARELLA, BYRNE, CECCHI,
        OLSTEIN, BRODY & AGNELLO, P.C.
        Attorneys for Plaintiff

        By: /s/ James E. Cecchi
          JAMES E. CECCHI

Dated: October 24, 2022

        Edmund A. Normand
        Joshua R. Jacobson
        NORMAND PLLC
        3165 McCrory Place, Ste. 175
        Orlando, FL 32803
        (407) 603-6031

        ***Attorneys For Plaintiff And Proposed Class***