IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| JESSICA DINICOLA-ORTIZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GEICO INDEMNITY COMPANY, <br><br> Defendant. | Civil No. 22-6228 (RBK/MJS) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendant GEICO Indemnity Company's ("GEICO") Motion to Dismiss (the "Mot." or "Motion to Dismiss") (ECF No. 7) and GEICO's Motion to Confirm the Appraisal Award (the "MTC" or "Motion to Confirm") (ECF No. 38). For the reasons set forth below, the Court **GRANTS** the Motion to Confirm but **DENIES** the Motion to Dismiss.

**I.   BACKGROUND**

   **A.   Factual Background**

The following factual background is taken from Dinicola-Ortiz's Amended Complaint (ECF No. 3, "Am. Compl."). As explained below, for the purposes of the Motion to Dismiss, we assume all these facts are true.

In 2021, Dinicola-Ortiz, a New Jersey citizen, took out a GEICO automobile insurance policy (the "Policy") to insure her 2015 Jeep Cherokee Latitude. (Am. Compl. ¶¶ 9, 15, 39). In October 2021, Dinicola-Ortiz got into an accident while operating her Jeep. (*Id.* at ¶ 40). She then filed a property damage claim with GEICO under the Policy. (*Id.*). During its investigation

1

of the claim, GEICO declared Dinicola-Ortiz's vehicle a "total loss." (*Id.* at ¶ 41). Insurers declare vehicles total losses when the cost to repair the damages to the vehicle exceeds the vehicle's "actual cash value" ("ACV"). (*Id.* at ¶¶ 2, 13). In those instances, insurers typically limit their liability to the vehicle's ACV. (*Id.*). The Policy at issue here does just that. (*Id.* at ¶¶ 2, 18). The Policy defined ACV as "the replacement cost of the auto or property less ***depreciation*** or ***betterment***." (*Id.* at ¶ 19). The Policy further defined "betterment" as "improvement of the auto or property to a value greater than its pre-loss condition" and "depreciation" as "a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes." (*Id.*).

GEICO determines a vehicle's ACV (and thus the amount it claims it owes insureds who suffered a total loss) by engaging CCC Intelligent Solutions, Inc. to help compute a vehicle's ACV. (*Id.* at ¶ 24). To do so, CCC creates a "Market Valuation Report" that calculates a vehicle's ACV based on the computed values of purportedly comparable vehicles recently sold or listed for sale within the insured's geographic area. (*Id.*). CCC starts with the base value of the comparable vehicles, i.e., the average retail price of vehicles of the same make, model, and year as the insured vehicle. (*Id.* at ¶ 43). CCC then makes "adjustments" to that base value. (*Id.* at ¶¶ 27–28; ECF No. 3-1, Am. Compl., Ex. A at 13). Those adjustments may be upward or downward and are based on factors such as "options" or "mileage," among others. (Am. Compl. at ¶ 27).

The adjustment at issue here is CCC's "condition adjustment." (*Id.* at ¶¶ 4, 28–38, 44–49; Ex. A at 13). CCC's report does not itemize the condition adjustment or explain its basis other than in a footnote, which says, "The **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition

section." (Am. Compl. at ¶¶ 28, 30; Ex. A at 12–13). According to the Amended Complaint, what this means is that "CCC assumes every comparable vehicle is in retail condition, and thus imposes the 'condition adjustment' to take the comparable vehicles from retail to private party condition." (Am. Compl. at ¶ 29). The condition adjustment CCC applied to Dinicola-Ortiz's valuation reduced each comparable vehicle's adjusted value by $1,196. (*Id.*; Ex. A at 13). CCC applied the exact same $1,196 condition adjustment to each comparable vehicle in its report. (Am. Compl. at ¶ 32; Ex. A at 13).

Dinicola-Ortiz contends that neither GEICO nor CCC ever inspected or investigated any of the comparable vehicles' condition, and, therefore, they have no basis to determine whether any or all of the comparable vehicles were in the same, better, or worse condition than Dinicola-Ortiz's totaled Jeep or each other. (Am. Compl. at ¶ 31). Although the CCC report details myriad functional and aesthetic differentiators between the loss vehicle and its comps, it does not show any itemization related to the condition adjustment, nor are the condition adjustments different across the comparable vehicles—each shows a $1,196 blanket reduction. (Ex. A at 12–13). The report also does not explain why the base "List Price" for each vehicle does not accurately reflect the vehicle's condition. (Am. Compl. at ¶ 34). The Amended Complaint maintains that "even though each comparable vehicle has unique characteristics, the reports reduce the value of multiple comparable vehicles by the exact same amount, down to the last dollar, without any itemization or explanation for the reduction." (*Id.* at ¶ 33). Further, according to the Amended Complaint, the CCC report provided GEICO with vehicle values that did not consider the comp vehicles' retail costs. (*Id.* at ¶ 37). Finally, Dinicola-Ortiz alleges that GEICO "did not correspond with a single car dealer or consumer purchaser of the comparable vehicles to discover

3

the comparable vehicles' condition or whether the 'Condition Adjustment,' as applied, was accurate." (*Id.* at ¶ 38).

The CCC report calculated a base value for Dinicola-Ortiz's loss vehicle at $17,888. (*Id.* at ¶ 42; Ex. A at 2). CCC came to this base value using the comparable vehicle method described above, including use of the condition adjustment. (Am. Compl. at ¶¶ 43–46). After accounting for deductions for prior unrepaired damages and a deductible, and additions for applicable taxes and fees, GEICO ultimately paid Dinicola-Ortiz $16,572.47. (*See* Ex. A at 2 (although the report lists the Total valuation at $16,482.97, according to GEICO in its Motion to Confirm, it also included $89.50 in State and Local Regulatory Fees on top of that initial Total when it paid Dinicola-Ortiz, MTC at 2)). By inference from the Amended Complaint, Dinicola-Ortiz maintains this is $1,196 less than she would have received if GEICO had not applied the blanket condition adjustments to the comparable vehicles when determining her loss vehicle's base value. (*See* Am. Compl. at ¶¶ 44, 46–48). Dinicola-Ortiz maintains that GEICO did the same with potentially tens of thousands of other New Jersey claimants. (*Id.* at ¶ 49).

**B.     Procedural History**

Dinicola-Ortiz filed her initial complaint with this Court on October 24, 2022 on behalf of herself as well as a putative class of all those similarly situated. (ECF No. 1). She then filed her Amended Complaint a week later on October 31, 2022. (ECF No. 3). In response, GEICO filed the instant Motion to Dismiss on December 22, 2022. (ECF No. 7). After obtaining an extension, Dinicola-Ortiz opposed the Motion to Dismiss on January 23, 2023. (ECF No. 11, "Pl. Opp'n"). GEICO replied on January 30, 2023. (ECF No. 12, "Def. Reply"). On April 5, 2023, Dinicola-Ortiz filed a letter with the Court to highlight supplemental authority she believed was relevant to our disposition of the Motion to Dismiss. (ECF No. 24). On April 13, 2023, GEICO

4

filed its own (corrected) letter with the Court arguing that Dinicola-Ortiz's supplemental authority was inapposite. (ECF No. 27). On April 12, 2023, GEICO filed its own letter alerting the Court to supplemental authority it believed relevant and persuasive. (ECF No. 26). Dinicola-Ortiz argued that authority was inapposite on April 21, 2023, (ECF No. 30), and GEICO briefly responded to that argument on April 27, 2023, (ECF No. 32).

On November 14, 2022 (after Dinicola-Ortiz filed her Amended Complaint but before GEICO filed its Motion to Dismiss), GEICO demanded Dinicola-Ortiz consent to appraisal of her loss vehicle. (ECF No. 38, MTC at 2). The appraisers selected by both parties agreed to value the amount of loss at $17,703, not including state and local sales tax, licensing and other fees, and application of any deductible. (ECF No. 38-1, MTC at Ex. 1). While the Court was deciding the Motion to Dismiss, GEICO filed its Motion to Confirm on July 28, 2023. (ECF No. 38). On August 7, 2023, Dinicola-Ortiz responded by letting the Court know that she did not oppose the Motion to Confirm, but she argued that confirming the appraisal would not resolve, moot, or otherwise destroy her breach of contract claim. (ECF No. 39, "Appraisal Resp."). GEICO replied to that response on August 14, 2023. (ECF No. 40).

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction. "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis*,

5

824 F.3d at 346. A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.*

"In reviewing facial challenges to standing, [courts] apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon*, 846 F.3d at 633. Courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When considering a factual challenge, by contrast, "a court may weigh and consider evidence outside the pleadings." *Id.* (quotation marks omitted). "No presumptive truthfulness attaches to [the] plaintiff's allegations." *Davis*, 824 F.3d at 346 (cleaned up). Here, GEICO mounts a facial attack to Dinicola-Ortiz's alleged standing. (Mot. at 10).

  B.  **Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which the court can grant relief. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### III.  DISCUSSION

#### A.  Motion to Confirm

After filing its Motion to Dismiss but prior to this Court's resolution of that motion, GEICO filed its separate Motion to Confirm. (ECF No. 38). We can dispose of this motion quickly. Although in her response to the Motion to Confirm Dinicola-Ortiz provided argument as to why confirming the appraisal award would not moot or resolve her breach of contract claim, she explicitly did not oppose the motion. (Appraisal Resp. at 2). Since Dinicola-Ortiz does not oppose the motion, and the parties appear to have complied with the appraisal provision contained within the Policy, the Court grants the motion and confirms the appraisal award of $17,703.00. *See Robinson v. Metro Public Adjustment Inc.*, No. 21-11289, 2022 WL 17417110 at *5 (D.N.J. Dec. 5, 2022).

For the reasons explained below, however, we ultimately agree with Dinicola-Ortiz that confirming this award does not resolve or moot her claim at this stage, nor does it compel us to grant GEICO's Motion to Dismiss.

7

### B.      Motion to Dismiss

GEICO brings two challenges to Dinicola-Ortiz's Amended Complaint: (1) a Rule 12(b)(1) facial attack on her standing to bring the suit; and (2) a Rule 12(b)(6) challenge about whether her Amended Complaint states a plausible claim for relief. We address each in turn.

#### 1.      Article III Standing – Injury in Fact

To start, GEICO challenges this Court's jurisdiction to entertain this case. Specifically, GEICO contests whether Dinicola-Ortiz has sufficiently pled an injury-in-fact to satisfy Article III standing. "Under Article III of the United States Constitution, the power of the judiciary 'extends only to Cases and Controversies.'" *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)). Standing is a "distinct justiciability doctrine[] that limit[s] our jurisdiction to cases and controversies in which a plaintiff has a concrete stake." *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 475–76 (3d Cir. 2016). "Standing ensures that each plaintiff has the requisite personal interest at the commencement of the litigation[.]" *Id.* (cleaned up). "To have standing, a 'plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Earle Asphalt Co. v. Cty. of Atlantic*, Civ. No. 21-18355, 2022 WL 2833827, at *4 (D.N.J. July 20, 2022). An injury in fact is an injury "that is 'concrete,' 'particularized,' and 'actual or imminent.'" *Kaymak v. AAA Mid Atl., Inc.*, 529 Fed. App'x 222, 224 (3d Cir. 2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

GEICO's standing challenge is misplaced. GEICO conflates a challenge to standing's injury in fact requirement with a challenge to the merits of a breach of contract claim's damages element. Dinicola-Ortiz has pled an "injury-in-fact" sufficient to satisfy us that we have Article

III standing to hear this case: Dinicola-Ortiz claims GEICO breached their contract, undervalued her Jeep's ACV, and thus underpaid her claim. This affects Dinicola-Ortiz "in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). It is an alleged injury that "actually exist[s]." *Id.* at 340. It is real, not abstract. *Id.* In the most basic terms, there is a real case or controversy here about whether GEICO breached this contract.

Breach of contract and the financial injury that stems therefrom are concrete, particularized, and actual injuries. *See Desai v. Geico Cas. Co.*, 574 F. Supp. 3d 507, 520–21 (N.D. Ohio 2021). GEICO's real argument on this point is about whether GEICO underpaid, overpaid, or paid Dinicola-Ortiz the exact right amount based on the actual cash value of her vehicle. In fact, GEICO gives the game away in its brief. When it reached the point to argue the damages element of Dinicola-Ortiz's breach of contract claim, instead of making any new arguments, GEICO simply referred the Court back to its standing arguments. But those are not one and the same. Whether Dinicola-Ortiz actually suffered the injury she claims to have suffered (or, here, pled as much) is a merits issue, not a standing issue.

Nor do we believe the appraisal GEICO demanded and our subsequent confirmation of that valuation change this analysis. Although, as explored below, appraisal may (but ultimately does not) impact the merits of Dinicola-Ortiz's breach of contract claim, confirming the appraisal award does not change whether Dinicola-Ortiz alleged a sufficient injury to support Article III standing. She did. Thus, we deny GEICO's Motion to Dismiss pursuant to Rule 12(b)(1).

### 2. Failure to State a Claim

#### i. Motion to Confirm's Effect

The first question we must address is: if we confirm the $17,703 appraisal award, as we did, does that mean Dinicola-Ortiz can no longer state a plausible claim for relief? In effect, did

9

confirming the appraisal award moot Dinicola-Ortiz's breach of contract claim? We do not believe so.

The ACV of Dinicola-Ortiz's car is a question of fact that we have now, through the Motion to Confirm, decided. *See Robinson*, 2022 WL 17417110, at *5 ("[U]nder the Appraisal clause, the amount agreed upon by the appraisers is the amount of loss."). But what that $17,703 number means remains disputed between the parties. That is a question of fact that we cannot and should not resolve at this stage.

On the one hand, GEICO argues this new number means that the value it used to pay Dinicola-Ortiz ($17,888) was $185 more than the value now confirmed by the $17,703 appraisal award. (MTC at 2–3, 5). This means, in GEICO's view, it overpaid Dinicola-Ortiz's claim. (*Id.* at 3, 5). As such, GEICO argues, even if it did breach the Policy, Dinicola-Ortiz suffered no damages, and she therefore cannot sustain a breach of contract claim. (*Id.* at 5).

On the other hand, Dinicola-Ortiz argues this is not the proper way to view the appraisal award. Instead, Dinicola-Ortiz contends that the $17,703 appraisal award already accounts for a $1,960.24 deduction GEICO applied to her vehicle's original valuation for prior unrepaired damage. (Appraisal Resp. at 4). GEICO applied that deduction *after* CCC calculated the $17,888 base valuation. (Am. Compl., Ex. A at 2). As such, Dinicola-Ortiz contends we should compare the $17,703 appraisal valuation to $15,927.76: the $17,888 original valuation less the $1,960.24 deduction. (Appraisal Resp. at 4). This means, in Dinicola-Ortiz's view, GEICO still underpaid and breached the contract. (*See id.*).

The Motion to Dismiss stage is not the place to resolve this factual dispute, and we decline to do so. As such, we will continue with our analysis of whether Dinicola-Ortiz's Amended Complaint states a plausible claim for relief based on the allegations within it.

### ii.     Rule 12(b)(6) Analysis

Dinicola-Ortiz's Amended Complaint states a plausible claim for relief. Although we conduct our analysis referring solely to Dinicola-Ortiz's allegations about her total loss claim with GEICO, we assume at this stage the same logic applies to the whole putative class. We will resolve any potential questions regarding the putative class and its viability at a later stage.

Dinicola-Ortiz's Amended Complaint states one claim for relief: breach of contract. Under New Jersey law, to state a breach of contract claim, Dinicola-Ortiz must show (1) the parties formed a valid contract; (2) GEICO failed to perform under the contract's terms; and (3) she suffered damages because of that failure to perform. *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. App. Div. 2007). There is no dispute here about whether Dinicola-Ortiz and GEICO entered into an insurance agreement. (Mot. at 16). The dispute centers around the second and third elements. Taking all the factual allegations in her Amended Complaint as true, Dinicola-Ortiz has stated a plausible breach of contract claim.

GEICO first argues that it did not fail to perform or breach any duty it owed Dinicola-Ortiz. GEICO posits that Dinicola-Ortiz failed "to allege either what GEICO purportedly owed or that GEICO's payment was an underpayment." (*Id.* at 17). We disagree.

The Amended Complaint alleges that the Policy, with respect to "Collision" and "Comprehensive" coverage, limits the amount GEICO owes to the "actual cash value of the property at the time of loss." (Am. Compl. at ¶ 18). The Policy then defines "actual cash value" as "the replacement cost of the auto or property less depreciation or betterment[,]" then further defines depreciation and betterment. (*Id.* at ¶ 19). These are not legal conclusions. These are well-pled facts about the Policy's alleged terms. *See Santiago*, 629 F.3d at 130. Thus, we find it quite clear Dinicola-Ortiz adequately pled that, under the Policy, GEICO owed her the loss

11

vehicle's ACV at the time of the loss. The real question is whether Dinicola-Ortiz adequately pled that GEICO failed to do so. We believe she has.

GEICO argues its "duty under the insurance agreement is not derived from how it measures the total loss payment; its duty is to pay the amount owed for the claim." (Mot. at 17). That is partially true. GEICO is correct that under the Policy the duty it owed Dinicola-Ortiz was to pay the amount it owed Dinicola-Ortiz on her claim. But that duty *is* derived from how GEICO measures the total loss payment. GEICO owes Dinicola-Ortiz her Jeep's ACV. Because GEICO defines what it owes by a term that requires calculation, whether it fulfills that duty is necessarily derived from how it reaches that calculation, and GEICO must comply with all state and federal requirements for doing so. In a state like New Jersey that regulates how GEICO must calculate ACV, its duty is tethered to its compliance with those regulations because if GEICO does not follow those regulations and lowballs its offer to a claimant based on an invalid ACV, then it has not truly paid the "actual cash value of the property at the time of loss."

In New Jersey, when making cash settlements, as here, GEICO must comply with certain regulations. Although GEICO is correct that New Jersey law explicitly allows insurers to consider a vehicle's condition when paying out claims, *see* N.J.A.C. § 11:3-10.2, it still must adhere to other New Jersey regulations when doing so. As it applies here, GEICO must comply with New Jersey Administrative Code § 11:3-10.4 and, by incorporation through § 11:3-10.4(h), § 11:3-10.3(a)–(c) and (h)–(k).

Section § 11:3-10.4(a) says, "If the insurer elects to make a cash settlement, . . . [w]ritten, itemized valuations showing all options and deductions shall be included in the insurer's claim file and presented to the insured no later than the date of payment." Section 11:3-10.4(a)(3) goes on to say that if "the insurer elects to make a cash settlement, its offer, subject to applicable

12

additions or deductions, must be one of the following plus applicable sales tax: . . . 3. The fair market value of the insured vehicle, determined by using a source including a computerized database approved by the Commissioner that meets" all of the listed minimum criteria. Finally, as relevant here, § 11:3-10.4(h) makes § 11:3-10.3(a)–(c) and (h)–(k) applicable "to the adjustment of total losses[.]" Section 11:3-10.3(j) mandates, "Deductions for previous damage or prior condition of the vehicle must be measurable, discernible, itemized and specific as to the dollar amount, and those deductions must be included in the insurer's claim file. The deductions shall be limited to the amount by which the resale value of the motor vehicle is increased by the estimation of the previous damage or the correction of the prior condition."

On top of that GEICO must also comply with New Jersey statutes. For example, GEICO cannot engage in unfair claim settlement practices such as misrepresenting pertinent facts about the coverage at issue, failing to implement reasonable standards for investigating claims under its policies, and not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims. N.J. STAT. ANN. § 17B:30-13.1 (West 1975). Failing to adhere to any of these requirements could result in a breach of the Policy because doing so might result in GEICO not paying its insured the actual cash value of her property as the Policy requires.

According to the Amended Complaint, GEICO's practice of reducing comparable vehicles' values (and thus loss vehicle ACV) by use of the blanket condition adjustments, without itemization or explanation, violates these New Jersey laws and regulations. This in turn, according to the Amended Complaint, shows that GEICO failed to perform under the Policy because it resulted in GEICO's failure to pay Dinicola-Ortiz the accurate ACV of her Jeep.

We take a legal principle with us into the analysis: we must construe statutes and regulations about automobile insurance liberally to effect "the broadest protection of auto

13

accident victims consistent with" the statute's language. *Allstate Ins. Co. v. Malec*, 514 A.2d 832, 834 (N.J. 1986). Given that, taking the Amended Complaint's well-pled facts as true and drawing all reasonable inferences in Dinicola-Ortiz's favor—not GEICO's—we agree that GEICO failed to perform under the Policy.

The Amended Complaint states that GEICO applied the $1,196 condition adjustment to each of the comparable vehicles. (Am. Compl. at ¶ 44; Ex. A at 13). The condition adjustments are not itemized. (Ex. A at 12–13). The only explanation for the condition adjustment is that it is supposedly meant to adjust the comparable vehicles to "Average Private condition." (*Id.*). It does not, however, say what that means or provide any support as to why the comparable vehicles need to be reduced to Average Private condition, why they were not already in such condition, or, most importantly in our view, why the $1,196 amount is the appropriate amount by which to reduce the comparable vehicles' value to achieve that purpose. Further, the report says it applied the same adjustments to the other nine comparable vehicles used to calculate the ACV of Dinicola-Ortiz's loss vehicle. (*Id.* at 14). Thus, we believe it is a reasonable inference that GEICO applied the same $1,196 condition adjustment to those comparable vehicles, too.

We agree with Dinicola-Ortiz that, at least as pled, this practice violates New Jersey law. Dinicola-Ortiz's most salient point is that these condition adjustments, even though applied specifically to the comparable vehicles, still constitute a deduction for prior condition of the loss vehicle under § 11:3-10.3(j). (Pl. Opp'n at 10). Even though GEICO applies the condition adjustments to the comparable vehicles and not the loss vehicle, the entire supposed purpose of the condition adjustment is to quantify some difference in value between the comparable vehicles and the loss vehicle specifically because of the loss vehicle's purported lesser condition. These lowered values for the comparable vehicles are then directly used to calculate the loss

vehicle's ACV. The condition adjustments are therefore deductions for the prior condition of the loss vehicle because they reduced the ACV of the loss vehicle by $1,196, and, as such, New Jersey law requires them to be "measurable, discernible, itemized, and specific as to the dollar amount[.]" Section 11:3-10.4(h) makes this rule directly applicable to total loss claims.

Any other interpretation of these rules, such as the one GEICO proposes, see Def. Reply at 8–10, would allow insurers to circumvent the itemization requirement. Insurers could go further than what GEICO does here and apply all deductions for condition and damage to comparable vehicles instead of the loss vehicle itself, then value those deductions at whatever number they choose, without itemization or explanation. This end-run around the regulation is nonsensical and corroborates our interpretation of New Jersey's Code.

Even beyond that one regulation, Dinicola-Ortiz alleges that GEICO never inspected or investigated the comparable vehicles' conditions before applying the condition adjustments to them. (Am. Compl. at ¶ 31). We believe this plausibly violates § 17B:30-13.1 for failing to implement reasonable standards for investigating claims under its policies.

Therefore, based on the facts alleged and drawing reasonable inferences in Dinicola-Ortiz's favor, we find that Dinicola-Ortiz's Amended Complaint states a plausible claim that GEICO failed to perform under the contract and violated New Jersey law by applying the exact same unitemized, unexplained, uninvestigated condition deductions to all the comparable vehicles used to calculate the loss vehicle's ACV.

GEICO next argues that Dinicola-Ortiz has not suffered any damages caused by its failure to perform. We disagree. Dinicola-Ortiz alleges in her Amended Complaint that the blanket $1,196 condition adjustments applied to each of the comparable vehicles uniformly reduced the estimated value of those comparable vehicles by $1,196. (*Id.* at ¶¶ 32–33, 44). She

then alleges that GEICO averaged those estimated values to reach the ACV it calculated for Dinicola-Ortiz's loss vehicle. (*Id.* at ¶ 43). From this, we believe it is a reasonable inference to draw in Dinicola-Ortiz's favor that this practice reduced her vehicle's ACV by $1,196. This shows that Dinicola-Ortiz has pled enough to support a reasonable inference that she suffered damages, and thus has a plausible breach of contract claim.

In its opposition to that idea, GEICO relies heavily on a case from the Western District of Washington, *Sharawe v. Indian Harbor Ins. Co.*, No. 2:21-cv-1466-JHC, 614 F. Supp. 3d 892 (W.D. Wash. 2022). The *Sharawe* Court granted a motion to dismiss in a similar case to this, though there are notable differences we believe distinguish *Sharawe* from this case. First, *Sharawe* involved different state law: Washington and New Jersey do not employ identical codes regulating total loss claims. Second, *Sharawe* involved a different type of adjustment applied by the insurer. Here, the adjustment at issue is the condition adjustment. In *Sharawe*, it was a "Projected Sold Adjustment," which was a downward adjustment "of about seven percent as an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." *Id.* at 895 (internal quotation marks omitted). These are two disparate types of adjustments and two entirely different sets of laws. How those different adjustments interact with their respective state regulations is fundamentally different and distinguishes these two cases.

Third, and most importantly, a Ninth Circuit decision, *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134 (9th Cir. 2022), controlled *Sharawe*'s holdings. Although *Lara* involved the denial of class certification of claims similar to this case, it did not involve a motion to dismiss. The *Lara* Court held that plaintiffs in breach of contract cases such as these must allege "actual harm" beyond just a violation of state regulations. *Lara*, 25 F.4th at 1136. In *Lara*, the plaintiffs specifically asserted in their complaint that a regulatory violation was enough to sustain a breach

16

of contract claim. The *Lara* Court disagreed, and held that a "violation of the regulation isn't a breach . . . [because b]reach of contract requires not just a violation of the terms of the contract but also an injury." *Id.* at 1139. *Lara* reasoned that the complaint must contain allegations of harm—i.e., because of the violation, the insurer paid the claimant less than what it owed under the contract—because a regulatory violation alone could still result in the insurer calculating and paying out the correct ACV. *Id.* Thus, in such a case, a claimant would not have suffered any damages, and they could not win on the merits of a breach of contract claim. *Id.* The *Sharawe* Court, compelled by that holding, held that the plaintiff in its case "must allege that he was paid less than the true ACV of his vehicle." *Sharawe*, 614 F. Supp. 3d at 898. In so holding, the court further reasoned "alleging that Plaintiff is entitled to the difference between the ACV and the number calculated by Defendants using the Mitchell report is distinct from alleging that there *is* a difference between the two values, and that Plaintiff is entitled to that difference." *Id.* at 898–99.

Neither *Lara* nor *Sharawe* control here. But even if we accepted this reasoning as persuasive, as detailed earlier, we believe Dinicola-Ortiz pled enough to support a reasonable inference at this stage that she suffered $1,196 in damages and that GEICO's practice of employing unsupported condition adjustments resulted in GEICO paying less than the loss vehicle's true ACV. We found she did suffer "actual harm." Dinicola-Ortiz did not just allege she was entitled to the difference between the ACV and what GEICO paid her. She alleged enough to plausibly and reasonably infer that there *is* a difference between those two values.

While the Motion to Dismiss was pending, GEICO alerted the Court of a decision it believed supported its argument: *Curtis v. GEICO Cas. Co.*, Civ. No. ELH-22-1857, 2023 WL 2712608 (D. Md. Mar. 29, 2023). In *Curtis*, the Court granted GEICO's motion to dismiss a complaint that alleged GEICO violated Maryland and Illinois law and breached the contract

17

when it applied condition adjustments to purportedly reduce the comparable vehicles' value from "retail" value to private party value. *Id.* at \*2. As the court wrote, "[P]laintiffs allege that 'Geico paid $921.00 less than retail value,' and 'breached its contract with Plaintiff Curtis by failing to use retail value in determining the ACV cash payment.'" *Id.* at \*3.

We believe *Curtis* is inapposite to this case. The core problem at issue in *Curtis* was simply whether applying these condition adjustments in general violate Maryland and Illinois law (and thus breach the insurance contracts) because they improperly reduce the ACV of total loss vehicles below "retail" value. *Id.* at \*2. The *Curtis* plaintiffs did not challenge how GEICO applied the condition adjustments, only that they applied them at all. This is because both the Maryland and Illinois regulations in question used the phrase "retail value" to regulate what insurers' minimum payments to claimants must be for total losses. *Id.* at \*10–11. According to the *Curtis* plaintiffs, applying condition adjustments in any way lowered their vehicles' ACVs below retail value, violating the regulations. The court disagreed and found that "retail value," as used in those regulations, allowed GEICO to account for the loss vehicle's condition and that "retail value" did not necessarily mean "dealer retail condition." *Id.* at \*15–17.

Thus, *Curtis* analyzed a distinct and different issue than the one presented here. Dinicola-Ortiz does not contest that GEICO could potentially apply appropriate condition adjustments in New Jersey. (ECF No. 30 at 1). She contests the way GEICO applied them—that GEICO violated New Jersey regulations and breached her contract by failing to itemize, explain, and properly justify the condition adjustments, which resulted in GEICO underpaying her claim. New Jersey law, like its counterparts in Maryland and Illinois, certainly allows GEICO to account for vehicle condition generally. But it also provides further regulation on how it must do so. That is the issue presented here.

GEICO also argues "that GEICO's duty to Plaintiff, under GEICO's Policy and the law, is to pay her the amount she is owed for her loss vehicle. . . . If GEICO paid Plaintiff the actual cash value of her vehicle, then GEICO fulfilled its promise under its Policy and there is no breach and no injury in fact." (Def. Reply at 1–2). GEICO is, of course, correct. And if it turns out later that GEICO did pay Dinicola-Ortiz the actual cash value of her total loss vehicle, then Dinicola-Ortiz has no claim and no case. But at the motion to dismiss stage, we take all Dinicola-Ortiz's factual allegations as true and draw all reasonable inferences in her favor. We do not conduct factual inquiries into her allegations' validity. Not yet. Thus, even though GEICO's assertions are accurate, they do not preclude us from denying its Motion to Dismiss at this stage.

Dinicola-Ortiz pled that she and GEICO entered into an insurance agreement. She adequately pled that GEICO owed her a duty to pay her the ACV of her vehicle after GEICO declared it a total loss. She plausibly pled that GEICO failed to fulfill that duty when it lowered the ACV of Dinicola-Ortiz's vehicle by $1,196 by applying blanket condition adjustments to comparable vehicles without any itemization or explanation as to why GEICO should depress each of those vehicles' values by that specific amount, allegedly violating New Jersey law. And she pled that the $1,196 ACV reduction constitutes damages suffered directly because of GEICO's failure to perform. For these reasons, Dinicola-Ortiz adequately "nudged [her] claim[] across the line from conceivable to plausible," and the Court denies GEICO's Motion to Dismiss.

## IV.  CONCLUSION

For these reasons, the Court **GRANTS** the Motion to Confirm (ECF No. 38). The Court further **DENIES** the Motion to Dismiss (ECF No. 7). An appropriate Order follows.

Dated: August 30, 2023                                          /s/ Robert B. Kugler
                                                                                                   ROBERT B. KUGLER
                                                                                                    United States District Judge