IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JESSICA DINICOLA-ORTIZ, | : |
| Plaintiff, | : |
| v. | : Civil No. 22-6228 (RBK/MJS) |
| | : **OPINION** |
| GEICO INDEMNITY COMPANY, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court on Defendant GEICO Indemnity Company's ("GEICO" or "Defendant") Motion to Dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (the "Motion" or "Mot."). (ECF No. 49). For the reasons set forth below, the Court **DENIES** Defendant's Motion.

**I.   BACKGROUND**

   **A.   Factual Background[1]**

In 2021, Dinicola-Ortiz, a New Jersey citizen, took out a GEICO automobile insurance policy (the "Policy") to insure her 2015 Jeep Cherokee Latitude. (Am. Compl. ¶¶ 9, 15, 39). In October 2021, Dinicola-Ortiz got into an accident while operating her Jeep. (*Id.* ¶ 40). She then filed a property damage claim with GEICO under the Policy. (*Id.*). During its investigation of the

---

[1] The facts presented here are taken from Dinicola-Ortiz's Amended Complaint (ECF No. 3, "Am. Compl."), as well as the evidence submitted by the parties supporting or opposing the present Motion. As explained below, the Court in considering a factual challenge to its subject matter jurisdiction, as here, "may weigh and consider evidence outside the pleadings." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quotation marks and citations omitted). Further, the Court does not presume Dinicola-Ortiz's allegations to be true. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

1

claim, GEICO declared Dinicola-Ortiz's vehicle a "total loss." (*Id.* ¶ 41). Insurers declare vehicles total losses when the cost to repair the damages to the vehicle exceeds the vehicle's "actual cash value" ("ACV"). (*Id.* ¶¶ 2, 13). In those instances, insurers typically limit their liability to the vehicle's ACV. (*Id.*). The Policy at issue here does just that. (*Id.* ¶¶ 2, 18). The Policy defined ACV as "the replacement cost of the auto or property less *depreciation* or *betterment*." (*Id.* ¶ 19) (emphasis in original). The Policy further defined betterment as "improvement of the auto or property to a value greater than its pre-loss condition" and depreciation as "a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes." (*Id.*).

GEICO determines a vehicle's ACV—and thus the amount it claims it owes insureds who suffered a total loss—by engaging CCC Intelligent Solutions, Inc. ("CCC"), to help compute a vehicle's ACV. (*Id.* ¶ 24). To do so, CCC creates a "Market Valuation Report" that calculates a vehicle's ACV based on the computed values of purportedly comparable vehicles recently sold or listed for sale within the insured's geographic area. (*Id.*). CCC starts with the base value of the comparable vehicles, that is, the average retail price of vehicles of the same make, model, and year as the insured vehicle. (*Id.* ¶ 43). CCC then makes "adjustments" to that base value. (*Id.* ¶¶ 27–28; ECF No. 3-1, Am. Compl., Ex. A at 14).[2] Those adjustments may be upward or downward based on factors such as "options," mileage, and others. (Am. Compl. ¶ 27).

The CCC report calculated an ACV for Dinicola-Ortiz's loss vehicle of $17,888. (*Id.* ¶ 42; Ex. A at 3). CCC came to this value using the comparable vehicle method described above,

---

[2] All citations to specific pages of court documents use the page numbers generated automatically by the ECF system.

2

including use of a so-called "condition adjustment." (Am. Compl. ¶¶ 43–46). That adjustment is the focus of the underlying claim in this case. (*Id.* ¶¶ 4, 28–38, 44–49; Ex. A at 14). CCC's report does not itemize the condition adjustment or explain its basis other than in a footnote, which says, "The Condition Adjustment sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section." (Am. Compl. ¶¶ 28, 30; Ex. A at 13–14). In other words, "CCC assumes every comparable vehicle is in retail condition, and thus imposes the 'condition adjustment' to take the comparable vehicles from retail to private party condition." (Am. Compl. ¶ 29). The condition adjustment CCC applied in Dinicola-Ortiz's case reduced each comparable vehicle's adjusted value—and thus the ACV of her vehicle—by $1,196. (*Id.*; *id.*, Ex. A at 14).

According to the declaration of Thomas Mackwell (the "Mackwell Declaration"), the GEICO insurance adjuster who handled Dinicola-Ortiz's claim, the amount that GEICO ultimately paid Dinicola-Ortiz was $16,572.47. (ECF No. 49-1, Ex. 4, Mackwell Decl. ¶ 7). GEICO arrived at this number by starting with the ACV calculated by CCC of $17,888 (including the condition adjustment), adding $1,144.71 for taxes and fees, and subtracting $500 for Dinicola-Ortiz's deductible. (*Id.*). Finally, GEICO also subtracted $1,960.24 for a previous payment it issued to Dinicola-Ortiz so she could repair damage that her vehicle incurred in an earlier accident. (*Id.*). At the time of the accident that totaled her vehicle, Dinicola-Ortiz had yet to repair the previous damage. (*Id.* ¶¶ 4–6). The deduction for the pre-existing, unrepaired damage thus accounted for the amount GECIO already paid to Dinicola-Ortiz for her now-totaled vehicle. (*Id.* ¶ 6).

In November 2022, after Dinicola-Ortiz filed the present lawsuit, GEICO demanded that Dinicola-Ortiz consent to appraisal of her loss vehicle pursuant to an appraisal clause in the

3

Policy. (*Id*., Ex. 6). The appraisers selected by both parties agreed to value the amount of loss at $17,703, not including state and local sales tax, licensing and other fees, and application of any deductible. (*Id*., Ex. 1). The appraisers, however, now disagree about what the $17,703 figure means. Bill Vallely, the appraiser retained by GEICO, states in a sworn declaration (the "Vallely Declaration") that the figure was not reduced for the unrepaired prior damage to Dinicola-Ortiz's vehicle and that "[a]ny deduction for unrepaired prior damage to the Loss Vehicle must be subtracted from the amount of loss determined by Mr. Schroeder and I ($17,703)." (*Id*., Ex. 7, Vallely Decl. ¶¶ 6–8). In contrast, Jeffrey Schroeder, the appraiser retained by Dinicola-Ortiz, states in a sworn declaration (the "Schroeder Declaration") that the figure already includes "a downward adjustment of 9% to the value of the vehicle to account for the prior unrepaired damage." (ECF No. 55-1 at 1–2, Schroeder Decl. ¶ 9). Before applying the 9% downward adjustment, Schroeder valued the vehicle at $19,454. (*Id*. at 18).

Dinicola-Ortiz brings a single claim for breach of contract, arguing that GEICO underpaid her insurance claim by applying a downward condition adjustment that is "arbitrary, unexplained, and unjustified" and thus violates New Jersey law. (Am. Compl. ¶¶ 44, 46–48). Dinicola-Ortiz maintains that GEICO did the same with potentially tens of thousands of other New Jersey claimants. (*Id*. ¶ 49).

**B.     Procedural History**

Plaintiff Jessica Dinicola-Ortiz filed her initial Complaint on October 24, 2022, on behalf of herself and a putative class of all those similarly situated. (ECF No. 1). She filed an Amended Complaint a week later, on October 31, 2022. (ECF No. 3). In response, GEICO on December 22, 2022, filed a Motion to Dismiss—distinct from the present Motion—on two bases: lack of

subject matter jurisdiction and failure to state a claim. (ECF No. 7). The parties submitted briefing and letters related to that Motion. (ECF Nos. 11–12, 24–27, 30, 32).

On November 14, 2022, after Dinicola-Ortiz filed her Amended Complaint but before GEICO filed its first Motion to Dismiss, GEICO invoked the terms of the Policy to demand that Dinicola-Ortiz consent to an appraisal of her loss vehicle. (ECF No. 38 at 1–2). As described, the appraisers selected by both parties agreed to value the amount of loss at $17,703, not including state and local sales tax, licensing and other fees, and application of any deductible. (ECF No. 49-1, Ex. 1). Then, while the first Motion to Dismiss was pending before the Court, GEICO on July 28, 2023, filed a Motion to Confirm the Appraisal Award. (ECF No. 38). The parties submitted briefing on that Motion as well. (ECF Nos. 39–40).

The Court resolved both the first Motion to Dismiss and the Motion to Confirm the Appraisal Award in an Opinion and Order entered on August 31, 2023. (ECF Nos. 41–42). The Court granted the Motion to Confirm the Appraisal Award but denied the Motion to Dismiss in its entirety, including GEICO's facial attack on Dinicola-Ortiz's alleged standing. (*Id.*).

On October 13, 2023, GEICO filed the present Motion, which mounts a factual attack on the Court's subject matter jurisdiction. (Mot. 6). Dinicola-Ortiz opposed the Motion on November 6, 2023. (ECF No. 55, Opp'n Br.). GEICO replied on November 13, 2023. (ECF No. 57, Reply Br.). On April 16, 2024, GEICO filed a Notice of Supplemental Authority to alert the Court to an opinion issued by the Third Circuit Court of Appeals in *Lewis v. Gov't Employees Ins. Co.*, No. 22-3449, 2024 WL 1611865 (3d Cir. Apr. 2, 2024). (ECF No. 73). That case also involves a challenge to CCC's use of the condition adjustment in valuing total loss vehicles. *Lewis*, 2024 WL 1611865 at *1–3.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction. "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis*, 824 F.3d at 346). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis*, 824 F.3d at 346 (internal quotation marks and citations omitted). A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id*. (quoting *Const. Party of Pennsylvania*, 757 F.3d at 358).

"In reviewing facial challenges to standing, [courts] apply the same standard as on review of a motion to dismiss under Rule 12(b)(6)." *In re Horizon*, 846 F.3d at 633. Courts "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party of Pennsylvania*, 757 F.3d at 358 (citations omitted). When considering a factual challenge, by contrast, "a court may weigh and consider evidence outside the pleadings." *Id.* (quotation marks and citations omitted). "No presumptive truthfulness attaches to the plaintiff's allegations." *Davis*, 824 F.3d at 346 (cleaned up). As mentioned, GEICO here mounts a factual attack on Dinicola-Ortiz's alleged standing. (Mot. 6).

**B.      Article III Standing**

"Under Article III of the United States Constitution, the power of the judiciary 'extends only to Cases and Controversies.'" *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)). Standing is a "distinct justiciability doctrine[] that limit[s] our jurisdiction to cases and controversies in which a plaintiff has a concrete stake." *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 475–76 (3d Cir. 2016). "Standing ensures that each plaintiff has the requisite personal interest at the commencement of the litigation." *Id.* at 476 (cleaned up). To satisfy the standing requirement, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted). An injury in fact is an injury "that is 'concrete,' 'particularized,' and 'actual or imminent.'" *Kaymak v. AAA Mid Atl., Inc.*, 529 Fed. App'x 222, 224 (3d Cir. 2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan*, 504 U.S. at 561. As the Supreme Court has explained:

> Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Id.* (citations omitted). At the pleading stage, for example, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). Although the proof required to establish standing increases as the suit proceeds, "the standing inquiry remains focused on

7

whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

## III.  DISCUSSION

Defendant argues that Plaintiff does not have Article III standing and thus that the Court lacks subject matter jurisdiction to hear this case. Specifically, Defendant argues that Plaintiff has not adequately pleaded an injury in fact because Defendant actually *overpaid*—not underpaid—Plaintiff's insurance claim. (Mot. 10–14). Defendant arrives at this conclusion by comparing the ACV for Plaintiff's vehicle calculated by CCC—$17,888—to the amount of loss agreed to by the appraisers—$17,703. (Mot. 12). "The judicially-confirmed Appraisal Award conclusively determined the amount owed to Plaintiff for her loss vehicle was $185 less than the amount GEICO paid her for her loss," Defendant argues. (Mot. 5). "Because Plaintiff was not underpaid, there was no breach of Plaintiff's Policy and Plaintiff has no injury." (*Id*.).

Plaintiff disagrees with Defendant's characterization of the facts and holds fast to her assertion that she was underpaid. Plaintiff maintains that CCC's condition adjustment undervalued her vehicle—and thereby reduced the amount she should have received—by $1,196. (Opp'n Br. 5, 8). Further, Plaintiff asserts that the appraisal only confirmed that she was underpaid. (*Id*. at 8–10). Although the appraisers agreed on an appraisal award of $17,703, Plaintiff's appraiser accounted for the unrepaired damage to the vehicle in reaching that figure, whereas Defendant's appraiser did not. The value Plaintiff's appraisal assigned to the vehicle *before* deducting for the unrepaired damage was $19,454. (ECF No. 55-1 at 18). That number is higher than the ACV of $17,888 calculated by CCC—proof, again, according to Plaintiff, that

8

she was underpaid.[3] The following tables summarize the relevant valuations of Plaintiff's vehicle:

Table 1: GEICO/CCC's Valuation and Payout Calculation[4]

| | |
|---|---|
| ACV (labeled by CCC as "base vehicle value"), which includes downward condition adjustment of $1,196 | $17,888.00 |
| Deduction for prior unrepaired damage | ($1,960.24) |
| Vehicular tax | $1,055.21 |
| State/local regulatory fees | $89.50 |
| Plaintiff's deductible | ($500.00) |
| **AMOUNT PLAINTIFF RECEIVED** | **$16,572.47** |

Table 2: Valuation by Plaintiff's Appraiser[5]

| | |
|---|---|
| ACV (before deduction for prior unrepaired damage) | $19,454.00 |
| 9% downward adjustment for prior unrepaired damage | ($1,751.00) |
| **APPRAISAL AWARD** | **$17,703** |

The Court finds that at the pleading stage of this litigation, Plaintiff adequately pleads an injury in fact to satisfy Article III standing. The recently decided Third Circuit case that Defendant brings to the Court's attention, *Lewis*, 2024 WL 1611865, commands this outcome. As Defendant represents, *Lewis* involves a similar set of facts and legal claims. *See* (ECF No. 73 at 1). The plaintiffs in *Lewis* filed a putative class action against GEICO alleging breach of contract over GEICO's use of the condition adjustment, which they allege artificially reduced the

---

[3] Plaintiff in her brief picks different numbers to compare as proof of underpayment. She compares the $17,703 appraisal award to an "adjusted vehicle value" of $15,927.76 in CCC's market valuation report. (Opp'n Br. 10 (citing ECF No. 49-1, Ex. 7-B at 43 (same document as ECF No. 3-1, Am. Compl., Ex. A at 3))). Despite presenting the arithmetic in different ways, the practical effects of Plaintiff's and the Court's math are the same: Plaintiff was underpaid.

[4] These figures come from CCC's market valuation report, (ECF No. 3-1, Am. Compl., Ex. A at 3, 14), and the Mackwell Declaration. (Mackwell Decl. ¶ 7).

[5] These figures come from the appraisal report completed by Plaintiff's appraiser. (ECF No. 55-1 at 18).

valuation of their totaled vehicle and resulted in underpayment. 2024 WL 1611865, at *1.[6] The Third Circuit analyzed whether the plaintiffs had suffered an injury in fact from application of the condition adjustment and thus had standing to sue. *Id*. at *4. The Third Circuit ultimately concluded the plaintiffs had not suffered an injury. *Id*. at *4–5. However, the Third Circuit's reasoning, when applied to the facts of the present case, require the opposite outcome.

The Third Circuit began its analysis by noting that an allegation of financial harm is typically enough to confer standing:

> Financial harm is among "[t]he most obvious" concrete injuries. [*TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)]; *see also Cottrell v. Alcon Labs.*, 874 F.3d 154, 163 (3d Cir. 2017) ("[F]inancial harm is a classic and paradigmatic form of injury in fact." (cleaned up)). "If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion*, 594 U.S. at 425. "[A] loss of even a small amount of money is ordinarily" sufficient. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017).

*Id*. at *4.

The Third Circuit then stated that plaintiffs' allegation "that GEICO financially harmed them when it valued their car based on the condition adjustment"—and accordingly paid them less than their car was worth—was "a quintessential financial injury." *Id*. "Ordinarily, our standing inquiry would end there." *Id*. (citing *Cottrell*, 874 F.3d at 163 ("[W]here a plaintiff alleges financial harm, standing is often assumed without discussion.")).

In *Lewis*, however, the standing inquiry did not end there due to other facts specific to that case:

> True, CCC applied a condition adjustment that reduced its valuation of the comparable cars—and, by extension, the Lewises' car—by $1,006. But this adjustment was not the end of CCC's or GEICO's valuation process. After applying the downward adjustment, CCC boosted its valuation of the Lewises' car by $886 to account for its condition. With that valuation in hand, GEICO then negotiated

---

[6] Plaintiffs also asserted breach of contract under a second theory, *id*. at *2–3, which is not relevant here and therefore not discussed.

10

>with the Lewises, eventually applying a $1,200 upward "adjustment to settle" before paying their claim. Even if the condition adjustment harmed the Lewises by $1,006, as they allege, these other adjustments more than offset it. The Lewises stake their claim on an isolated intermediate step within GEICO's valuation process, but they ultimately avoided any financial injury.

*Id*. (citation to the record omitted).

Applying the Third Circuit's logic in *Lewis* to the present case, the Court must conclude that Plaintiff has adequately pleaded an injury in fact. As in *Lewis*, Plaintiff here alleges she was harmed by a condition adjustment that reduced the valuation of comparable cars, and thus that of her vehicle, by $1,196. Unlike in *Lewis*, however, Plaintiff here did not benefit from a subsequent upward adjustment for the condition of her vehicle or an upward "adjustment to settle" that offset the initial downward condition adjustment. Instead, the present case resembles more closely the hypothetical presented in *Lewis* where a plaintiff alleges "a quintessential financial injury" and the court ends its standing inquiry there. *Id*. Plaintiff here did not "ultimately avoid[] any financial injury." *Id*. at *4.

Defendant's reliance on the appraisal award does not save its Motion. While the Court may consider evidence outside the pleadings when considering a factual challenge to its subject matter jurisdiction, *see Const. Party of Pennsylvania*, 757 F.3d at 358, the evidence before the Court is inconclusive. The parties have submitted declarations from their appraisers that tell conflicting stories about the meaning of the $17,703 appraisal award. At this stage, the Court cannot resolve the factual dispute presented by those declarations.

The evidentiary dispute created by the declarations accrues to Plaintiff's benefit. All she must do at the pleading stage is plausibly allege an injury in fact. *See Lujan*, 504 U.S. at 561 (noting that each element of standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation"). Here, Plaintiff plausibly alleges, via

11

the Schroeder Declaration and Mr. Schroeder's appraisal report, that the ACV of her vehicle was $19,454 and thus GEICO underpaid her when it relied on CCC's ACV calculation of $17,888. *See* (Schroeder Decl. ¶¶ 8–9; ECF No. 55-1 at 18).

Therefore, with or without reference to the appraisal award, Plaintiff plausibly alleges that GEICO paid her less than what she was contractually owed and thus that she suffered an injury in fact that confers Article III standing at this stage of the litigation. Accordingly, Defendant's Motion must be denied.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 49) is **DENIED**. An Order follows.

Dated:   April 26, 2024                                                    /s/ Robert B. Kugler
                                                                           ROBERT B. KUGLER
                                                                           United States District Judge

12