[Docket No. 130]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JESSICA DINICOLA-ORTIZ, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>GEICO INDEMNITY COMPANY,<br><br>Defendant. | No. 22-CV-6228 (RMB) (MJS)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

How much does a "totaled" vehicle cost? Car insurers answer this question hundreds of times a day using *almost* as many different methods and factors. One such factor is a so-called "condition" or "negotiation" adjustment to allegedly approximate a vehicle's actual cash value ("ACV") more accurately. When looking at vehicles listed for sale as comparators to a totaled car, some insurers assume (1) a vehicle listed for sale at a dealer is in better condition than the average privately owned vehicle, and (2) using dealer sticker prices as value comparisons misses a price reduction that most consumers receive. Because both assumptions inflate the amount an insurer pays for a totaled car, insurers sometimes adjust ACV downward to compensate. This lawsuit challenges Defendant's New Jersey variant—the "condition adjustment."

Before the Court is Defendant GEICO Indemnity Company (hereinafter, Defendant or GEICO)'s Motion to Dismiss or Strike Plaintiff Jessica Dinicola-Ortiz's class claims. [Docket No. 130.] Dinicola-Ortiz brings a breach of contract claim on behalf of herself and a putative class. She alleges GEICO contracted to pay her and class members the actual cash value for their totaled cars, but GEICO's condition adjustment unlawfully reduced that value because it was not properly itemized as New Jersey law requires. [Docket No. 3 ¶¶ 21, 47, 64]; N.J.A.C. § 11:3-10.4(a).

## I. FACTUAL BACKGROUND

The Court previously articulated much of the relevant factual background in an earlier opinion:

> In 2021, Dinicola-Ortiz, a New Jersey citizen, took out a GEICO automobile insurance policy (the "Policy") to insure her 2015 Jeep Cherokee Latitude. [Docket No. 3 ¶¶ 9, 15, 39.] In October 2021, Dinicola-Ortiz got into an accident while operating her Jeep. [*Id.* ¶ 40.] She then filed a property damage claim with GEICO under the Policy. [*Id.*] During its investigation of the claim, GEICO declared Dinicola-Ortiz's vehicle a "total loss." [*Id.* ¶ 41.] Insurers declare vehicles total losses when the cost to repair the damages to the vehicle exceeds the vehicle's [ACV]. [*Id.* ¶¶ 2, 13.] In those instances, insurers typically limit their liability to the vehicle's ACV. [*Id.*] The Policy at issue here does just that. [*Id.* ¶¶ 2, 18.] The Policy defined ACV as "the replacement cost of the auto or property less depreciation or betterment." [*Id.* ¶ 19 (emphasis in original).] . . .
>
> GEICO determines a vehicle's ACV—and thus the amount it claims it owes insureds who suffered a total loss—by engaging CCC Intelligent Solutions, Inc. ("CCC"), to help compute a vehicle's ACV. [*Id.* ¶ 24.] To do so, CCC creates a "Market Valuation Report" that calculates a vehicle's

> ACV based on the computed values of purportedly comparable vehicles recently sold or listed for sale within the insured's geographic area. [*Id.*] CCC starts with the base value of the comparable vehicles, that is, the average retail price of vehicles of the same make, model, and year as the insured vehicle. [*Id.* ¶ 43.] CCC then makes "adjustments" to that base value. [*Id.* ¶¶ 27–28; Docket No. 3-1 at 14.] Those adjustments may be upward or downward based on factors such as "options," mileage, and others. [Docket No. 3 ¶ 27.]
>
> The CCC report calculated an ACV for Dinicola-Ortiz's loss vehicle of $17,888. [*Id.* ¶ 42; Docket No. 3-1 at 3.] CCC came to this value using the comparable vehicle method described above, including use of a so-called "condition adjustment." [Docket No. 3 ¶¶ 43–46.] That adjustment is the focus of the underlying claim in this case. [*Id.* ¶¶ 4, 28–38, 44–49; Docket No. 3-1 at 14.] CCC's report does not itemize the condition adjustment or explain its basis other than in a footnote, which says, "The Condition Adjustment sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section." [Docket No. 3 ¶¶ 28, 30; Docket No. 3-1 at 13–14.] In other words, "CCC assumes every comparable vehicle is in retail condition, and thus imposes the 'condition adjustment' to take the comparable vehicles from retail to private party condition." [Docket No. 3 ¶ 29.]
> . . .
>
> Dinicola-Ortiz brings a single claim for breach of contract, arguing that GEICO underpaid her insurance claim by applying a downward condition adjustment that is "arbitrary, unexplained, and unjustified" and thus violates New Jersey law. [Docket No. 3 ¶¶ 44, 46–48.] Dinicola-Ortiz maintains that GEICO did the same with potentially tens of thousands of other New Jersey claimants. [*Id.* ¶ 49.]

*Dinicola-Ortiz v. GEICO Indem. Co.*, 2024 WL 1827611, at *1–2 (D.N.J. Apr. 26, 2024) (Kugler, J.).

## II. PROCEDURAL BACKGROUND

Dinicola-Ortiz brings claims on behalf of a putative class composed of those "tens of thousands of other New Jersey claimants" alleging they did not receive ACV from GEICO for their totaled vehicles. [Docket No. 3 ¶¶ 49–50.] After Dinicola-Ortiz filed her Amended Complaint, the Third Circuit ruled on two central issues presented by her claims: (1) who has standing to bring ACV claims, *Lewis v. Gov't Emps. Ins. Co.*, 98 F.4th 452 (3d Cir. 2024); and (2) whether a court may certify a class of ACV claimants under Federal Rule of Civil Procedure 23(b)(3), *Drummond v. Progressive Specialty Ins. Co.*, 142 F.4th 149 (3d Cir. 2025).

First, the Third Circuit held only insureds who received less than their totaled vehicles' ACV have standing to bring ACV claims. *Lewis*, 98 F.4th at 460. Even if the insurer's process is flawed, Article III standing demands an *actual*, not theoretical, injury. *Id.* ("Although the Lewises argue that GEICO might have paid them even more if CCC had not applied the condition adjustment, this theory is too speculative to confer standing."). Any flaw in an insurer's valuation and settlement process that does not produce a payout below a vehicle's ACV is theoretical because—regardless of the reason—plaintiff received the ACV they bargained for. *Id.* ("The Lewises stake their claim on an isolated intermediate step within GEICO's valuation process, but they ultimately avoided any financial injury.") After all, some GEICO insureds, like the Lewises, received ***more*** than their vehicle's ACV even with a negative condition adjustment. *Id.* ("Even if the condition adjustment harmed the Lewises by $1,006, as

they allege, these other adjustments ***more than offset*** it.") (emphasis added). Windfalls are not actionable.

Applying *Lewis*, the Court held Dinicola-Ortiz has standing to bring her individual breach of contract claim. *Dinicola-Ortiz*, 2024 WL 1827611, at *4–5 (Kugler, J.). When the parties stipulated to an independent appraisal of Dinicola-Ortiz's vehicle, the disputed ACV became an agreed sum: $19,454.00. *Id.* at *4–5. With that information added to it, Dinicola-Ortiz's Complaint plausibly alleged the $16,572.47 GEICO paid her is less than the ACV of her vehicle. *Id.* at *5.[1] Over the next year, the parties exchanged discovery, diligently working to resolve disputes and move the case forward.

In July 2025, the Third Circuit issued *Drummond*, its second opinion addressing a fundamental question raised by Dinicola-Ortiz's claims. The Third Circuit found courts generally may not certify a class challenging whether an insurer paid class members ACV for their totaled vehicles. *Drummond*, 142 F.4th at 159. Individualized questions predominate over questions common to the class. To start, the amount an insurer must pay its insured is set by each ***individual vehicle's*** ACV. *See id.* Breach is just as individualized; that analysis reviews what an insurer ***actually paid*** each insured. *Id.* Because two essential elements of breach of contract—duty and breach—required

---

[1] This matter has been before three judges of this Court. Judge Kugler presided over both *Lewis* and this matter from their filing until his retirement in June 2024—not long after issuing the opinion finding that Dinicola-Ortiz had standing. [Docket No. 78.] *Lewis* was reassigned to the undersigned, and this matter was initially reassigned to Judge Kiel. [*Id.*] It was later reassigned to the undersigned. [Docket No. 122.]

plaintiff-specific proof, individualized evidence "overwhelmed" class evidence, and the claims were unsuitable for class treatment. *Id.* That class certification issue is presently before the Court—does *Drummond* doom Dinicola-Ortiz's class claims?

In August 2025, GEICO requested a case management conference to address *Drummond*'s impact on this matter. Judge Kiel held a conference on November 6, 2025, [Docket No. 123], and GEICO requested leave to file a motion to dismiss or strike Dinicola-Ortiz's class claims pursuant to *Drummond*. [Docket No. 123 at 7:10–13.] The parties also addressed the fact that *Lewis* and this matter no longer shared a district judge, [*Id.* at 8:14–20], and this matter was reassigned given *Lewis's* relatedness shortly after the conference. [Docket No. 122.] On November 13, 2025, GEICO formalized its request for leave by submitting a pre-motion letter in accordance with the undersigned's individual policies and preferences, [Docket No. 124], which the Court granted after a December 10 pre-motion hearing, [Docket Nos. 128–29]. GEICO's Motion to Dismiss or Strike Dinicola-Ortiz's putative class claims followed.

## III. LEGAL STANDARD

Courts may strike class claims under Rule 12(f) in rare cases. Class claims may form the "redundant, immaterial, [or] impertinent" material a court may strike from pleadings, FED. R. CIV. P. 12(f), when it is clear from the face of a plaintiff's complaint a court could never certify the proposed class, *Cannon v. Ashburn Corp.*, 2016 WL 7130913, at *11 (D.N.J. Dec. 7, 2016) (Bumb, J.). Although motions to strike are disfavored, *id.* (citing *McPeak v. S-L Distrib. Co.*, 2014 WL 4388562, at *3 (D.N.J. Sept.

5, 2014)), as Dinicola-Ortiz herself notes, "[g]ranting a motion to strike before class discovery ***is proper*** [] where 'the Complaint itself demonstrates that the requirement of a class action ***cannot be met***.'" [Docket No. 131 at 16 (emphasis added) (citing *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 497 (E.D. Pa. 2016)]; *Puerto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 459 (D.N.J. 2015).

One category of properly stricken claims is those that clearly fail Rule 23(b)(3)'s predominance requirement. *See, e.g.*, *Schmidt Loduca v. WellPet LLC*, 2022 WL 2304308, at *5 (E.D. Pa. June 27, 2022) (dog owners' individualized decision-making in choosing a brand of pet food overwhelmed common class allegations); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 514 (W.D. Pa. 2019) (individualized evidence of employee compensation predominated). "[Q]uestions of law or fact common to class members [must] predominate over any questions affecting only individual members[.]" FED. R. CIV. P. 23(b)(3). The mere presence of individual questions does not render a class incapable of certification. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998). But "a putative class fails to clear the predominance requirement when individualized evidence overwhelms the case and renders it unsuitable for class-wide adjudication." *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 305 (3d Cir. 2016). District courts analyze what evidence will predominate by "formulat[ing] some prediction as to how specific issues will play out in a given case[.]" *Drummond*, 142 F.4th at 159 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)). "This analysis

will often resemble a merits determination, in that it relates to plaintiffs' ability to prove the elements of their claims." *Id.* (quoting *Harnish*, 833 F.3d at 305).

## IV. DISCUSSION

*Drummond* forbids Dinicola-Ortiz's ACV class claims. *Drummond* is on all fours, as the "condition adjustment" ACV claims here mirror the "projected sales adjustment" ACV claims present in *Drummond*. Dinicola-Ortiz's attempts to distinguish *Drummond*—that it turned on Pennsylvania, not New Jersey, law and that it dealt with a different insurer—are not persuasive. Because certification of Dinicola-Ortiz's proposed class would not be legally available in light of *Drummond*, this matter is the rare case where striking class claims before Rule 23 discovery is appropriate.

### A. The Court could never certify Dinicola-Ortiz's putative class, and her class claims must be dismissed.

Dinicola-Ortiz seeks a class of GEICO's New Jersey insureds affected by GEICO's use of the condition adjustment. [Docket No. 3 ¶ 50.] The purported class does not account for *Lewis*'s holding that only claimants who received an amount less than their vehicle's ACV may succeed under a breach of contract theory. *Lewis*, 98 F.4th at 460. Dinicola-Ortiz brings her class claims under Rule 23(b)(3), [Docket No. 131 at 16]—implicating its predominance requirement.

Dinicola-Ortiz's claim is one in a series of recent, strikingly similar challenges to insurer adjustments in the valuation process for totaled automobiles. At least four United States Courts of Appeals considered Rule 23(b)(3) class certification requests for ACV claims in the last four years. All four Circuits agree these ACV claims, no

matter what the various negative adjustments are called (*e.g.*, condition or negotiation), are not suitable for class treatment because individual questions predominate over any questions common to the class. *Drummond*, 142 F.4th at 159–60; *Clippinger v. State Farm Auto. Ins. Co.*, 173 F.4th 817, 832 (6th Cir. 2026) ("Determining fair market value requires an independent and individualized assessment of each absent class member's property."); *Freeman v. Progressive Direct Ins. Co.*, 149 F.4th 461, 469 (4th Cir. 2025) ("In short, the core proof of each breach of contract claim would have to center on the value of each individual vehicle[.]"); *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1140 (9th Cir. 2022) ("Whether Liberty and CCC's condition adjustment violates the Washington state regulations is a common question. But to show liability for breach of contract or unfair trade practices, Plaintiffs must also show an injury. And to show an injury will require an individualized determination for each plaintiff.").

*Drummond* is illustrative of all four cases, and its claims are nearly identical to Dinicola-Ortiz's claims here. In that case, the plaintiffs brought class claims against Progressive arguing it failed to pay ACV for totaled vehicles. 142 F.4th at 154. Progressive lowered its comparators' sticker prices with a "Projected Sold Adjustment"—a negative adjustment designed to reflect price haggling. *Id.* at 153. And putative class members needed to allege Progressive paid them less than their vehicle's ACV to succeed at trial. *Id.* at 159. The Third Circuit held that ACV

evidence is individual to specific plaintiffs, and such claims are not suitable for class treatment:

> [I]dentifying whether each class member was actually paid less than true ACV is an individual question. Rule 23(b)(3) requires that plaintiffs prove this core issue of underpayment—on which both breach and damages in their breach-of-contract claim turn—with class-wide proof. Plaintiffs cannot meet that burden. And because proving the underpayment issue is essential to Progressive's alleged liability for breach of contract, we believe that "individualized evidence" of whether each class member's vehicle's ACV was greater than the final settlement value would "overwhelm the case." *Harnish*, 833 F.3d at 305. Accordingly, because "proof of the essential elements of [plaintiffs'] cause of action requires individual treatment," common issues as to Progressive's liability do not predominate. *In re Hydrogen Peroxide*, 552 F.3d at 311 (citation omitted).

*Id.*; *see also Clippinger*, 173 F.4th at 832; *Freeman*, 149 F.4th at 469; *Lara*, 25 F.4th at 1140.

The exact same individualized inquiries prohibiting class treatment in *Drummond* prohibit class treatment here. Dinicola-Ortiz brings claims against GEICO arguing the same thing—it failed to pay putative class members ACV for their totaled vehicles because of a negative condition adjustment applied to comparators. Every proposed class member must furnish individual evidence of their vehicle's ACV and that GEICO paid them less than that amount. Those individualized assessments eliminate any efficiency gained through a class action.

The appraisal performed in this case demonstrates the predominance problem. Before this Court arrived at the conclusion Dinicola-Ortiz had standing, it had to

ascertain the "ACV" of Dinicola-Ortiz's totaled vehicle through an independent third-party appraisal process under Dinicola-Ortiz's GEICO insurance policy. Every class member would need to undergo a similar process to prove their claims, meaning "individual evidence will [] overwhelm the case[.]" *Id.* at 159 (internal quotation marks omitted) (quoting *Harnish*, 833 F.3d at 305). Because this Court could not, faithfully applying *Drummond*, certify Dinicola-Ortiz's proposed class, her class claims are stricken from the Amended Complaint.

Amendment is futile as well. Even if Dinicola-Ortiz limited her class definition to those GEICO insureds who *did not* receive ACV for their vehicles, Rule 23(b)(3)'s requirement for *common evidence* dooms the class. Each class member would still have to present individualized evidence of their car's "true" ACV to establish the amount GEICO underpaid them. That individual inquiry is exactly what Rule 23(b)(3) and *Drummond* forbid. 142 F.4th at 159–60 ("Accordingly each class member would have to bring in necessarily individual proof, plaintiff-by-plaintiff, to determine which were undercompensated.").

Dinicola-Ortiz's argument that there are common *questions* ignores Rule 23(b)(3)'s requirement for common *evidence* to answer them. *In re Hydrogen* Peroxide, 552 F.3d at 311 ("If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."); *Drummond*, 142 F.4th at 162 ("Courts must scrutinize the elements of plaintiffs' cause of action in determining whether liability issues at the merit stage will be capable of common proof."). That

requirement makes sense—common questions do not save the Court and the litigants any time if they must be answered by every plaintiff with individual evidence. And that is exactly why the Third Circuit forbade ACV classes in *Drummond*—the question common to all class plaintiffs, whether GEICO paid them ACV, cannot be answered by a single plaintiff speaking for all. Every plaintiff must speak for themselves.

**B. Differences between Pennsylvania and New Jersey law do not compel a different outcome.**

Dinicola-Ortiz relies heavily on differences between Pennsylvania and New Jersey law to distinguish *Drummond* and argue for class certification. [Docket No. 131 at 20–25.] New Jersey law requires one uniform valuation methodology applied statewide, [*id.* at 21], and Pennsylvania *compels* insurers to use multiple valuation methodologies, [*id.* at 22]. Thus, according to Dinicola-Ortiz, one incorrect step in a single valuation method is attenuated in a Pennsylvania valuation but is dispositive in a New Jersey valuation. [*Id.* at 22 ("[U]nder Pennsylvania law, it cannot be said that one adjustment . . . determines the overall outcome of valuation.").]

This argument confuses agreed methods for calculating ACV with ACV. True, the agreed method for calculating ACV is part of a contract and failing to use that agreed method is, in a vacuum, a breach. The Third Circuit's point in *Lewis* is "so what?" Without resulting damages—that is, a payment below ACV—the breach is not actionable. *Lewis*, 98 F.4th at 460.

ACV—what GEICO contracted to pay Dinicola-Ortiz—is, at the time of an accident, "an absolute, static value that cannot be decreased." *Drummond*, 142 F.4th

at 159. The parties agreed-to methods approximate ACV, and when there is no dispute, conclusively determine it. However, if there is a dispute, a plaintiff must necessarily allege ACV another way—like the appraisal conducted in this case—to allege in turn his insurer paid him less. In other words, ACV is a question of fact, and the agreed methodology is part of GEICO's duty, which it may (or may not) breach. They are distinct concepts that Dinicola-Ortiz conflates. And GEICO may breach its duty in calculating ACV, but if that breach does not result in payment less than an ACV plaintiff can allege another way, it is not actionable.

Assuming *arguendo* that GEICO's inclusion of a condition adjustment uniformly breaches GEICO's contract with its insureds, it does not *necessarily* follow that GEICO failed to pay ACV for any individual plaintiff's vehicle. It only shows the amount GEICO paid was less than that amount without a condition adjustment. It does not speak to ACV. A plaintiff must allege the condition adjustment breach resulted in a payment less than ACV. Discerning that necessary harm is the individual inquiry *Drummond* held would overwhelm common questions in a prospective class action with ACV claims. The difference between New Jersey and Pennsylvania law allowing multiple valuation methods does not alter that analysis.

The same is true of Dinicola-Ortiz's claims the condition adjustment violates New Jersey law—it does not remove the need for an individual assessment of harm. A bare violation of a regulation without resulting damages is not actionable. *Lewis*, 98 F.4th at 461 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021)) ("[B]are

procedural violations, divorced from any concrete harm . . . do[] not suffice for Article III standing.") (alteration in original); *Lara*, 25 F.4th at 1140. Those complaints are properly before the New Jersey Department of Banking & Insurance—the body New Jersey entrusted with regulating its insurance industry and enforcing compliance. *See Lewis*, 98 F.4th at 461. The individualized assessment remains necessary to establish each class member suffered harm, precluding Dinicola-Ortiz's class claims.

Dinicola-Ortiz points to *Clippinger* as an example of differences in state law creating a certifiable class under Rule 23(b)(3). [Docket No. 144 at 1–2.] She argues that although the Sixth Circuit in *Clippinger* denied class certification to Tennessee ACV plaintiffs for want of predominance, 173 F.4th at 832, it acknowledged a case *certifying* a Kentucky class of ACV plaintiffs in the way Dinicola-Ortiz asks the Court to here: Kentucky state law permitted only one valuation method and Tennessee law allowed many. [*Id.* at 1–2 (citing *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 461 (6th Cir. 2020)).] Thus, the Court should certify a class of New Jerseyans just like the *Hicks* Court did Kentuckians, or so the argument goes.

Dinicola-Ortiz's proffered rationale—Kentucky does not permit multiple valuation methods—is not the reason *Hicks* certified a class of Kentucky insureds. The Kentucky insurance regulations at issue contained a unique provision missing from other ACV cases—*any* insurer miscalculation must resolve in an insured's favor. *Hicks*, 965 F.3d at 461. And all members of the class at issue suffered the same overestimation of labor depreciation. *Id.* Thus, State Farm *always* underpaid its

insureds because its error must *always* be resolved in the insured's favor. *Id.* Individual questions of harm did not predominate because class-wide evidence of State Farm's *practice* sufficed to show class members were *injured*. Although there is a difference in New Jersey and Pennsylvania law here, that difference does not create the inference of loss attributable to every plaintiff found in *Hicks*.

Neither *Clippinger* nor *Hicks* resolves Dinicola-Ortiz's problem with ACV in this case. Individualized evidence (to prove what GEICO owed each of its insureds and what it paid them) overwhelms the common evidence of GEICO's condition adjustment practices. Indeed, just like *Drummond*, *Clippinger* appears to be on all fours—and precludes Dinicola-Ortiz's class claims.

## V. CONCLUSION

For the foregoing reasons, GEICO's Motion to Strike is **GRANTED**. Dinicola-Ortiz's class claims are **STRICKEN** from the Amended Complaint.

August 28, 2026
Date

**/s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge